[No. B001255. Second Dist., Div. Six. June 7, 1984.]

ROBERT EARL McCROCKLIN, Plaintiff and Appellant, v. EMPLOYMENT DEVELOPMENT DEPARTMENT et al., Defendants and Respondents; BUTLER SERVICE GROUP, INCORPORATED, Real Party in Interest and Respondent.

**COUNSEL**

Robert Earl McCrocklin, in pro. per., for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, and Anne S. Pressman, Deputy Attorney General, for Defendants and Respondents.

No appearance for Real Party in Interest and Respondent.

**OPINION**

**GILBERT, J.**—Robert Earl McCrocklin appeals from a judgment denying his petition for a writ of mandate. The sole issue is whether McCrocklin left his employment "voluntarily without good cause" under Unemployment Insurance Code section 1256. We conclude that he did leave for good cause, and therefore reverse the judgment.

McCrocklin asserts that his departure was justified because his employer should not have forced him to work in "an inadequately-ventilated noisy space reeking of tobacco smoke." The Employment Development Department (EDD), an administrative law judge, the California Unemployment Insurance Appeals Board (CUIAB) and the trial court each disagreed with McCrocklin's assessment of his work situation, thereby snuffing out his claim for unemployment benefits.

## FACTS

McCrocklin was employed as an engineering writer on an intermittent contract basis by Butler Service Group, Incorporated (Butler) over a period of four years. At the time he quit his job at Butler, he had been writing a project engineering manual for the company. He worked in a room containing numerous partially enclosed cubicles. McCrocklin's cubicle measured five by six feet and had plywood walls and a glass top. Three of the nine people assigned to work in McCrocklin's area smoked pipes, cigarettes or cigars. The tobacco smoke and noise produced by his coworkers entered the space in McCrocklin's cubicle.

McCrocklin tried unsuccessfully to alleviate the smoke problem in his cubicle by the use of two fans which, McCrocklin testified, only served to put him "in the crossfire of a hurricane." The problem was further aggravated because the area where McCrocklin's cubicle was located was enclosed and unventilated. In addition, the doors to this area were locked at all times due to the confidential nature of the work.

McCrocklin aired his complaints about the ventilation and noise to the management within a week or two after beginning his job. He was promised that the working conditions would soon be ameliorated by the installation of floor to ceiling partitions, an air circulation system, and doors on the cubicles to muffle the sound of other employees' talking and laughing. Despite this promise, the situation remained unchanged. The company denied McCrocklin's requests to do his work at home. If this didn't cause smoldering resentment, his having to work on weekends and nights because of the smoke, did.

McCrocklin testified that he is not allergic to smoke, although he does find it unpleasant and offensive. He also testified that he occasionally smokes a pipe at home, and that he has smoked cigars in the past. Nonetheless, McCrocklin objected to the carcinogenic effect of breathing smoke produced by other people in an enclosed space. McCrocklin expressed concern that the cigarette smoke would affect his health and that he would be "another guinea pig." He also noted that smoke from certain brands of cigarettes makes his eyes water and his throat raw, and that one of his coworkers used such a brand.

McCrocklin's application for unemployment benefits was denied by the Employment Development Department. The EDD decided that he had quit his job without good cause because there was no showing that the conditions at his workplace resulted in an undue hardship or threat to McCrocklin's health or welfare. He then appealed this determination to an administrative law judge, and a hearing on the matter was conducted which culminated in an affirmation of the EDD's decision. McCrocklin's appeal to the Unemployment Insurance Appeals Board was similarly unsuccessful. Finally, McCrocklin's petition for a writ of mandate pursuant to Code of Civil Procedure section 1094.5 was denied by the court below. Hoping to make a phoenix rise from the ashes of his claim for unemployment benefits, McCrocklin has appealed to this court.[1]

DISCUSSION

The statute controlling McCrocklin's claim for unemployment benefits is section 1256 of the Unemployment Insurance Code, which reads in pertinent part that "[a]n individual is disqualified for unemployment compensation benefits if the director finds that he or she left his or her most recent work voluntarily without good cause . . . ." We must determine whether the administrative agency charged with administering the unemployment benefits program made a legally supportable interpretation of the legislative meaning in the phrase "good cause." (*Zorrero* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434, 438 [120 Cal.Rptr. 855].) ▮ "Good cause" means a legally sufficient ground or reason for a certain action. "In general 'good cause,' as used in an unemployment compensation statute, means such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for

---

[1]McCrocklin did not heed the words of renowned physician Sir William Osler: "Things cannot always go your way. Learn to accept in silence the minor aggravations, cultivate the gift of taciturnity and consume your own smoke with an extra draught of hard work, so that those about you may not be annoyed with the dust and soot of your complaints." From Harvey Cushing, the Life of Sir William Osler (1925) volume I, chapter 14. How could McCrocklin be taciturn when he was consuming not his own smoke, but that of others?

such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed." (*Zorrero, supra,* at p. 439 citing 81 C.J.S., Social Security and Public Welfare, § 167, p. 253.) "It has been held that the Legislature intended by the phrase 'good cause' to include some causes which are personal and that it need not necessarily arise out of or be attributable to the employment itself." (*Rabago* v. *Unemployment Ins. Appeals Bd.* (1978) 84 Cal.App.3d 200, 208 [148 Cal.Rptr. 499].)

■ The decision of the administrative law judge in this case, which was subsequently adopted by the Unemployment Insurance Board, denied McCrocklin's claim because the absence of competent medical evidence purportedly constrained a finding that he did not have good cause for voluntarily leaving work. Horace Greeley's definition of a cigar as "a fire at one end and a fool at the other" may find support in studies which discuss the deleterious effects of "secondhand" tobacco smoke.[2] There is even legal authority recognizing that exposure to cigarette smoke is a health hazard to nonsmokers.[3] At the hearing, McCrocklin failed to present anything other than several hearsay newspaper articles on the subject of smoking. The articles stressed the deleterious effect of cigarette smoke on nonsmokers, and referred to the Surgeon General's Report. Although no competent medical evidence was introduced to support a finding that secondhand smoke constituted a health hazard to McCrocklin, the articles nevertheless provided a basis for his reasonable belief that smoke was a health hazard.

By focusing solely on the lack of "competent medical evidence," the EDD, the administrative law judge, the Unemployment Insurance Board and

---

[2] See for example, the Surgeon General's Reports, U.S. Department of Health, Education and Welfare for 1972, 1975 and 1979.

[3] In *Alexander* v. *Unemployment Ins. Appeals Bd.* (1980) 104 Cal.App.3d 97, 100 [163 Cal.Rptr. 411, 14 A.L.R.4th 1229], the appellate court found that Alexander had good cause for rejecting work where cigarette smoke was present because it would be injurious to her health. In *Shimp* v. *New Jersey Bell Telephone Co.* (1976) 145 N.J. Super. 516 [368 A.2d 408, 415] the court stated: "The evidence is clear and overwhelming. Cigarette smoke contaminates and pollutes the air, creating a health hazard not merely to the smoker, but to all those around her who must rely upon the same air supply. The Right of an individual to risk his or her own health does not include the right to jeopardize the health of those who must remain around him or her in order to properly perform the duties of their jobs. The portion of the population which is especially sensitive to cigarette smoke is so significant that it is reasonable to expect an employer to foresee health consequences and to impose upon him a duty to abate the hazard which causes the discomfort."

See also related law review articles, including *The Legal Conflict Between Smokers and Nonsmokers: The Majestic Vice Versus the Right to Clean Air* (1980) 45 Mo. L.Rev. 444 and *Legislation Against Smoking Pollution* by Axel-Lute in 6 Envir. Affairs 345 (1978).

We also note that the cities of San Francisco, Palo Alto and Pasadena have recently adopted by referendum laws restricting smoking in the workplace.

the trial court failed to consider whether McCrocklin was motivated to leave his employment by a reasonable, good faith and honest fear of harm to his health.

In *Rabago* v. *Unemployment Ins. Appeals Bd.*, *supra,* 84 Cal.App.3d 200, the appellant was motivated to quit his job largely because of his fear of potential lead poisoning. The court reviewed several precedent decisions rendered by the Unemployment Insurance Appeals Board and by courts in other jurisdictions. These included one case in which a court found good cause when an employee quit his job because he feared physical injury from doing heavy lifting on the job, although there was no evidence that the employee was advised to quit by a physician. (*Alabama Mills* v. *Brand* (1948) 251 Ala. 643 [38 So.2d 574], cited in *Rabago, supra,* at p. 210.) In another case, the CUIAB found that an employee's fear of contracting pneumonia from working in an unheated building constituted good cause for leaving because a reasonable person genuinely desiring to be employed would have done the same to avoid endangering her health. (Precedent Benefit Decision No. PB144, cited in *Rabago, supra,* at p. 210.)

■ The *Rabago* court concluded, as we conclude here, that ". . . a reasonable, good faith and honest fear of harm to one's health or safety from the work environment and conditions of employment falls within the ambit of good cause as defined by the California cases and comports with the purpose of the Unemployment Insurance Act [citation omitted] and the rule that the courts must liberally construe the act so as to effect all of the relief the Legislature intended to grant [citation omitted]. Further, this result harmonizes with the principle that 'good cause' can include some causes that are personal . . . ." (84 Cal.App.3d at pp. 210-211.)

Nonsmokers who must work with smokers should not construe our holding as an invitation to quit their jobs in anticipation that they will automatically receive unemployment benefits. The unrefuted particular facts in this case reflect that McCrocklin's fears were reasonable because of the following: (1) He was working in an enclosed, poorly ventilated room; (2) several of his coworkers in his area smoked; (3) the tobacco smoke could not be excluded from his cubicle; (4) he had a good-faith belief that the smoke had a carcinogenic effect on his health; and (5) breathing smoke from certain brands of cigarettes made his eyes water and his throat raw.

The California Supreme Court recently approved the *Rabago* "reasonable, good faith and honest fear of harm to one's health or safety" test in *Amador* v. *Unemployment Ins. Appeals Board* (1984) 35 Cal.3d 671 [200 Cal.Rptr. 298, 677 P.2d 224]. The court found that the approach contained in *Rabago* "accords with the basic purpose of the code 'to insure a diligent

worker against the vicissitudes of enforced unemployment not voluntarily created without good cause.'" (*Id.*, at p. 683.) The court concluded that "[i]t can no longer be maintained that a 'diligent' worker is one who blindly follows his or her employer's orders regardless of the potential consequences. The health hazards of the modern work environment—to employees, consumers, and the population at large—are serious and widespread, and the record of employers in controlling those hazards does not inspire such confidence that a reasonable worker can be expected to trust invariably his or her employer's judgment." (*Ibid.*)

 Where the facts in a case are undisputed and opposing inferences may not reasonably be drawn from those facts, the issue of whether or not there is "good cause" is an issue of law. (*Amador v. Unemployment Ins. Appeals Board, supra,* 35 Cal.3d at p. 685; *Norman v. Unemployment Ins. Appeals Bd.,* (1983) 34 Cal.3d 1, 6 [192 Cal.Rptr. 134, 663 P.2d 904].) Therefore, in our review of a ruling on a writ of mandate where the probative facts of the case which are not in dispute clearly require a conclusion different from that reached by the trial court, we may disregard its conclusion. (*Amador v. Unemployment Ins. Appeals Board, supra,* 35 Cal.3d at p. 679; *General Motors Corp. v. Cal. Unemployment Ins. Appeals Bd.* (1967) 253 Cal.App.2d 540 [61 Cal.Rptr. 483].)

 McCrocklin voluntarily left his job because he found working in a smoke-filled environment intolerable, not only because he suffered tangible physical side-effects, but also because he reasonably feared for his health and safety. Our holding is not affected by the trial judge's failure to find that a health hazard existed. "[I]f one reason which constitutes good cause is a substantial motivating factor in causing the employee to quit, the employee is entitled to benefits notwithstanding the existence of one or more other reasons for quitting which would not qualify as good cause." (*Rabago v. Unemployment Ins. Appeals Bd., supra,* 84 Cal.App.3d 200, 209.) We conclude that McCrocklin reasonably and in good faith feared harm to his health from working in an unventilated room filled with tobacco smoke. Accordingly we hold that he is entitled to unemployment benefits.

McCrocklin could not have anticipated that he would have to breathe tobacco smoke when performing his employment. Working in an enclosed, unventilated smoke filled room is not an occupational hazard commonly associated with the writing of engineering manuals. Thus we cannot say McCrocklin assumed the risk of breathing smoke-laden air when he accepted employment with Butler Service Group.

The judgment is reversed, with directions to the trial court to issue a writ of mandate ordering the Employment Development Department to pay to McCrocklin the unemployment benefits withheld.

Stone, P. J., and Abbe, J., concurred.