[No. F008432. Fifth Dist. Feb. 11, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.

ROBERT EMMIT ANTHONY McGIRR, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

630

COUNSEL

Brian C. Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Joel Carey and Laura Heidt, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARTIN, Acting P. J.—An information was filed on July 30, 1986, in the Stanislaus County Superior Court charging appellant with child concealment in violation of Penal Code section 277.[1]

Appellant waived his right to a jury trial and submitted the matter on the basis of the preliminary hearing transcript. The trial court found appellant guilty of child concealment in violation of section 277.

At the sentencing hearing, imposition of sentence was suspended. Appellant was granted three years probation on the condition that he serve one hundred and three days in jail with credit for time served. Appellant filed a timely notice of appeal.

FACTS

Appellant cohabitated with Ms. D. from 1983 until May of 1986. A daughter, Sabreena, was born to the couple on June 9, 1985. After the couple separated, the child remained with Ms. D. and appellant visited with the child on occasion. No formal or court-ordered custody or visitation arrangements were determined.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

On Thursday, June 19, 1986, Ms. D. left Sabreena with appellant at the home of appellant's mother in Escalon. It was agreed that Ms. D. would return for Sabreena on Sunday. However, the preceding Friday appellant telephoned Ms. D. and asked to keep Sabreena until Tuesday in order to buy her clothes and have her photograph taken. It was finally agreed to extend the visit until Wednesday, June 25, 1986. Appellant told Ms. D. she could pick up Sabreena at his parents' home Wednesday at 1:30 p.m. "sharp." When the mother arrived to retrieve Sabreena, appellant and Sabreena were not there and appellant's mother handed Ms. D. a letter from appellant.

Ms. D. read the letter and accompanied appellant's mother to a phone booth. Appellant telephoned at approximately 3:30 p.m. During the course of two telephone calls appellant informed Ms. D. that Sabreena was with him and Ms. D. would have to "do certain things" if she wanted to see Sabreena again. Ms. D. was to move in with appellant's parents, explaining to her family that she and appellant had reunited. He also demanded she contact an attorney and give appellant complete custody of Sabreena. If Ms. D. did not meet these demands, she was told she would never see Sabreena again. He threatened, however, that if she did recover physical custody of Sabreena, he would "do whatever he had to do to get her back. If he had to come back and kill all [of Ms. D.'s] family to do it, he'd do it." She was warned not to call the police and if he "felt any heat" he would leave the country if necessary. He then arranged for a followup phone call for the following Monday at 8 p.m.

On Monday, as instructed, Ms. D. returned to the telephone booth with appellant's mother and stepfather. During this telephone conversation, appellant instructed Ms. D. to remain with his mother on Tuesday night and bring money for a bus ticket. His parents would then take her to the bus station on Wednesday. Upon arrival at the destination, Ms. D. would be met by someone. Appellant indicated he would call Tuesday night at the Glow Worm bar and reveal the rendezvous point.

Appellant telephoned Ms. D. at the Glow Worm bar at approximately 6:40 p.m. on Tuesday night. He revealed that he and Sabreena were in Paradise, California, and that upon Ms. D.'s arrival there she would be met by someone named "Rick" in a stationwagon. After appellant determined to his satisfaction that she was not being followed, she would be reunited with Sabreena.

On Wednesday morning, Ms. D. took a bus to Paradise as instructed. She was met by appellant who gave her a big hug. At that point, the authorities, who had been contacted by Ms. D., intervened and arrested appellant. A

sheriff's deputy escorted Ms. D. to a trailer park where she was reunited with Sabreena.

## *Defense*

Appellant testified he had known Ms. D. eight or nine years and acknowledged fathering their child, Sabreena. Appellant claimed he had been concerned about Sàbreena's welfare. According to appellant, Ms. D.'s mother customarily brought strange men home from bars, one of whom attacked appellant with a knife. Ms. D.'s sister, Sharon, was allegedly selling cocaine, and left dangerous paraphernalia, i.e., a razor blade, within Sabreena's reach. Appellant caught Sabreena as she was placing a razor blade she found on the floor in her mouth.

Appellant testified that due to these concerns he contacted an attorney on June 20, 1986, who informed appellant he was not legally required to return Sabreena to her mother. However, the attorney cautioned that pursuant to an "unwritten law," if Ms. D. contacted the police, they would probably return Sabreena to her.

He further testified his only intention in taking Sabreena was to remove Sabreena from an unsafe environment.

## Discussion

## I. Whether Preamended Section 277 Is Unconstitutionally Vague

Section 277 provided at the time of the incident in question and at time of trial: "In the absence of a court order determining rights of custody or visitation to a minor child, every person having a right of custody of the child who maliciously takes, detains, conceals, or entices away that child within or without the state, *without good cause,* and with the intent to deprive the custody right of another person or a public agency also having a custody right to that child, shall be punished by imprisonment in the county jail for a period of not more than one year, a fine of one thousand dollars ($1,000), or both, or by imprisonment in the state prison for a period of one year and one day, a fine of five thousand dollars ($5,000), or both.

"A subsequently obtained court order for custody or visitation shall not affect the application of this section.

"For purposes of this section, 'a person having a right of custody' means the legal guardian of the child or a person who has a parent and child

relationship with the child pursuant to Section 197 of the Civil Code." (Italics added.)

By urgency measure, on September 26, 1986, the Legislature amended section 277 by adding the following paragraph: "As used in this section, 'good cause' means a good faith belief that the taking, detaining, concealing, or enticing away of the child is necessary to protect the child from immediate bodily injury or emotional harm."

■ Appellant challenges the preamended statute as being unconstitutionally vague in that section 277 failed to provide any guidance as to what constitutes "good cause."

■ " '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 . . . .) However, '[a] statute is fatally vague only when it exposes a potential actor to some risk or detriment without giving him fair warning of the nature of the proscribed conduct.' (*Rowan* v. *Post Office Dept.* (1970) 397 U.S. 728, 740 . . . .)" (*People* v. *Lortz* (1982) 137 Cal.App.3d 363, 370 [187 Cal.Rptr. 89].)

The California Supreme Court, in a majority opinion authored by Justice Grodin, reviewed the "void for vagueness doctrine" in *Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755 [221 Cal.Rptr. 779, 710 P.2d 845]: " 'Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' (*Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109 [33 L.Ed.2d 222, 92 S.Ct. 2294], fns. omitted [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294].)" (*Id.* at p. 763.)

■ The high court further explained the vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. (*Ibid.*) "This is so because '[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct

is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged.' [Citations.] For this reason, '[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness.' [Citation.]" (*Id.* at p. 764.)

██ Respondent contends the section is not void for vagueness in that the term "good cause" used in the preamended section has acquired reasonable certainty by long-established usage and a well-settled conmonsense meaning. (*McMurtry* v. *State Board of Medical Examiners* (1960) 180 Cal.App.2d 760, 766-767 [4 Cal.Rptr. 910].)

In *Roth* v. *United States* (1957) 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304], it was argued that an obscenity statute did not provide reasonable ascertainable standards of guilt and therefore violated the constitutional requirements of due process. The court stated at pages 491-492 [1 L.Ed.2d at p. 1510-1511]: "This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . .' [Citation.]"

In *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board* (1960) 178 Cal.App.2d 263 [3 Cal.Rptr. 37], the Second District Court of Appeal, in determining whether the employer made a prima facie showing that the claimant/employee left his employment with the employer voluntarily and without good cause, looked to a Pennsylvania Superior Court case construing the term "good cause" in an identical statute: " 'Of course, "good cause" and "personal reasons" are flexible phrases, capable of contraction and expansion, and by construction, all meaning can be compressed out of them or they may be expanded to cover almost any meaning. Reducing them to a fixed, definite and rigid standard, if desirable, is necessarily difficult, if not impossible. However, in whatever context they appear, they connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results, adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith. When related to the context of the statute, "good cause" takes on the hue of its surroundings, and it, and "personal reasons," must be construed in the light reflected by its text and objectives.' " (*Id.* at pp. 272-273, quoting *Bliley Electric Co.* v. *Unemployment Comp. Board of Review* (1946) 158 Pa.Super. 548 [45 A.2d 898, 903].)

The Second District Court of Appeal in *Zorrero* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434 [120 Cal.Rptr. 855], in determining a

complainant was ineligible for unemployment compensation on the ground that he quit work voluntarily without good cause, held voluntary termination of employment for good cause must be based on "serious and exigent circumstances." (*Id.* at p. 439.)

In another unemployment benefits case, the Second District Court of Appeal determined " '[g]ood cause' means a legally sufficient ground or reason for a certain action." (*McCrocklin* v. *Employment Development Dept.* (1984) 156 Cal.App.3d 1067, 1071 [205 Cal.Rptr. 156].) In *R. J. Cardinal Co.* v. *Ritchie* (1963) 218 Cal.App.2d 124 [32 Cal.Rptr. 545], the First District Court of Appeal stated that the "nucleus" of the concept of "good cause" involved the essential ingredients of reasonable grounds and good faith. (*Id.* at p. 145.)

"The concept of good cause should not be enshrined in legal formalism; it calls for a factual exposition of a reasonable ground . . . [or] a good reason for a party's failure to perform that specific requirement from which he seeks to be excused . . ." or, in the converse, to excuse conduct otherwise prohibited. (*Waters* v. *Superior Court* (1962) 58 Cal.2d 885, 893 [27 Cal.Rptr. 153, 377 P.2d 265]; *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669, 681 [156 Cal.Rptr. 55].)

■ The power of a court to declare a statute unconstitutional is an ultimate power; its use should be avoided if a reasonable statutory construction makes the use unnecessary. (*Ashwander* v. *Valley Authority* (1936) 297 U.S. 288, 346 [80 L.Ed. 688, 710, 56 S.Ct. 466] (conc. opn. of Brandeis, J.); *Syrek* v. *California Unemployment Insurance Appeals Board* (1960) 54 Cal.2d 519, 526 [7 Cal.Rptr. 97, 354 P.2d 625].)

■ Thus, respondent contends that the phrase "good cause" has a common and generally accepted meaning and, therefore, submits that preamended section 277 is not unconstitutionally vague.

In our view, respondent's reasoning has merit. "Good cause" has in fact acquired reasonable certainty by established usage, interpretation and a settled commonsense meaning. Moreover, the term "good cause" as used in both the preamended and postamended section is further narrowed or circumscribed by the requirement that the taking, detaining, concealment or enticing of the child be done maliciously, i.e., with malice. Malice is defined in section 7, subdivision (4): "The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." And as Professor Witkin states, "But such hatred or intent to injure is rarely required; the element of malice in most criminal statutes is satisfied by the intentional

doing of the act without justification or excuse or mitigating circumstances ('an intent to do a wrongful act')." (1 Witkin, Cal. Crimes, § 60, p. 64.) Thus, if one acts maliciously in the taking, concealing, etc. of the child, as established by the record, it seems logical he or she did not have good cause, i.e., acted without good cause. Upon this analysis, we conclude the preamended section 277 was not unconstitutionally vague for allegedly failing to provide any guidance as to what constitutes "good cause." Appellant's argument must fail.

■ Assuming arguendo we were in agreement with appellant's initial argument, we would further find, in the instant case, appellant's conduct clearly falls within the prohibition of section 277. This is particularly true in light of the fact that the preamended and postamended section 277 require that an offender act "with the intent to deprive the custody right of another person . . . also having a custody right to that child." (See *Erlich* v. *Municipal Court* (1961) 55 Cal.2d 553, 559 [11 Cal.Rptr. 758, 360 P.2d 334]; *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974].)

"However, 'the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid . . . . [W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law. The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that punishes without warning an offense of which the accused was unaware.' (*Screws* v. *United States* (1945) 325 U.S. 91, 101 . . . .)" (*People* v. *Yoshimura* (1976) 62 Cal.App.3d 410, 414-415 [133 Cal.Rptr. 228].)

Appellant's conduct so clearly falls within the prohibition of section 277 that the phrase "without good cause" as applied to appellant is constitutionally valid. Throughout the incident, appellant's actions did not manifest a subjective or objective belief that he was acting within the law. Appellant arranged to speak with Sabreena's mother at designated pay telephones, instructing his mother to answer the phone first on each occasion. Sabreena's mother was warned not to contact the police and appellant made threats on her family should she attempt to retrieve Sabreena. In reviewing the evidence in the light most favorable to respondent, it is not reasonable to infer that appellant believed subjectively or objectively that his actions were within the law or legally justified so as to constitute "good cause" for the abduction of his daughter. Appellant's self-serving testimony directed toward justifying his conduct lacked credibility. Thus, we would conclude

section 277 is not void for vagueness under the facts of the instant case in that appellant's conduct falls clearly within the prohibitions of the section without credible evidence of good cause.

II., III.*

. . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Best, J., and Ballantyne, J., concurred.

---

*See footnote, *ante*, page 629.