Filed 10/9/14

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>ACCREDITED SURETY CASUALTY COMPANY,<br><br>   Defendant and Appellant. | F067506<br><br>(Super. Ct. No. F11903429)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Alan Simpson, Judge.

E. Alan Nunez for Defendant and Appellant.

Kevin Briggs, County Counsel, Evan A. Merat, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

A surety on a bail bond appeals an order denying its motion to set aside summary judgment, to discharge forfeiture, and to exonerate the bond. The surety contends it should have been give a 20-day extension to file its motion because it satisfied the "good cause" requirement of Penal Code section 1305.6, subdivision (b).[1] The surety further contends that exoneration is appropriate because the defendant was returned to custody within the 185-day appearance or exoneration period.[2] Specifically, the surety claims the defendant (1) was arrested in Sacramento County on new charges within three months of his nonappearance in Fresno; (2) had a hold from the Fresno County Sheriff placed on him while in jail in Sacramento County; and (3) was convicted and sentenced in Sacramento County and then transferred to state prison where he remains incarcerated.

We publish this opinion because section 1305.6 was enacted recently and its good cause requirement has not been addressed in an appellate decision. Based on the record before us, we conclude (1) the appropriate test for good cause contains an objective component (i.e., reasonableness) and subjective good faith component. In determining whether a surety acted reasonably and in good faith, courts must consider the totality of the circumstances and evaluate the reasons given by the surety for not filing a motion within the 185-day appearance period.

In this case, the evidentiary showing presented by the surety was insufficient to establish that it acted reasonably in waiting until after the expiration of the appearance period to seek exoneration of the bond. For instance, the record does not show why it was reasonable for the surety's bail agent to believe (1) the defendant would be returned to Fresno County and (2) that return would occur before the appearance period expired.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The 180-day period set forth in section 1305 is extended by five days when the notice of forfeiture is sent by mail. (§ 1305, subd. (b).) In this case, the appearance period was 185 days, which is the number of days we will use in describing the period, except when quoting cases or statutory text that refers to 180 days.

Also, the surety failed to show that an objectively reasonable bail agent would have been misled about the status of the bond by the copy of a minute order provided by the clerk of court's office. That minute order apparently exonerated another bond, but we cannot evaluate the reasonableness of the bail agent's interpretation of that document because the surety did not include it in the appellate record. Consequently, the trial court correctly determined the surety failed to establish good cause for the 20-day extension contained in section 1305.6, subdivision (b).

We therefore affirm the judgment.

## FACTS

On August 16, 2012, Accredited Surety and Casualty Company, a Florida corporation, through its bail agent California Capital Bail Bonds (collectively, Surety), posted bail bond number A50-00621044 in the amount of $25,000 (Bond #044) for the release of defendant Christopher DVaughn Williams in Fresno County Superior Court case No. F11903429.

Williams was scheduled for arraignment on August 21, 2012, but failed to appear. As a result, the trial court issued a bench warrant for Williams and ordered Bond #044 forfeited. The bail forfeiture notice signed and mailed by a deputy clerk of court stated the court "may consider setting aside the forfeiture if within 185 days of the time of forfeiture, defendant surrenders to the court or is brought to court by bailor, and is able to offer sufficient reason for the failure to appear as cited. At the expiration of 185 days, if the forfeiture is not set aside, the bail amount is due and payable to the court."

The 185-day period referenced in the bail forfeiture notice, if not tolled or extended, would have expired on February 22, 2013.

On November 9, 2012, Williams was arrested by the Sacramento Police Department on unrelated charges and held in the Sacramento County Jail. Records Supervisor Xai of the Fresno County Sheriff's Office certified in writing that a hold for Fresno County Superior Court case No. F11903429 was placed on Williams with the

3.

Sacramento County Sheriff's Department on November 9, 2012, the same day as his arrest.

Later that November, the bail agent investigating the location of Williams received a telephone tip that Williams had been arrested in Sacramento, California. Williams was in the hospital and it took time for him to show up as in custody.

On December 7, 2012, a bail agent for Surety accessed the Sacramento County Sheriff Office's website and printed an updated inmate details sheet from the Sacramento County Inmate Information System. The sheet indicated Williams (1) was in custody on local charges, (2) had outstanding warrants from Marin, Solano and Fresno Counties,[3] and (3) had no projected release date. The bail agent, based on his prior experience with defendants in custody, believed that Williams would be shipped to Fresno once his case in Sacramento was completed.

On January 7, 2013, Williams was sentenced to two years in state prison for the Sacramento County charges.

In January 2013, the bail agent phoned the office of the Fresno County clerk of court to determine if Williams had been returned to Fresno County and if Bond #044 had been exonerated. The clerk told the bail agent she would confirm and call him back. About five days later, the bail agent phoned the clerk of court again to determine if the bond was exonerated. He spoke with a clerk who told him the clerk's office was behind and had not had a chance to confirm the status of the bond.

The bail agent then went to the clerk's office on the second floor of the courthouse, spoke with the clerk, and was told they could not find Williams's file. The clerk printed a minute order showing the exoneration of a bail bond and gave it to the bail

---

**3** The sheet did not identify the cases or the charges related to the outstanding warrants. As a result, the sheet does not indicate the warrant from the Fresno County Sheriff's Department was for the case in which Bond #044 was posted.

agent. The bail agent subsequently learned that the exoneration related to a prior bond issued for Williams by All Pro Bail Bonds.

The bail agent returned to the court and asked whether Bond #044 was exonerated. He was informed by the clerks that they still could not locate Williams's file. The bail agent followed up with the clerk's office over the next two weeks to see if Williams's file had been located. The clerks informed him that they could not confirm whether the bond was exonerated until they found the file.

On February 22, 2013, Sacramento County transferred Williams to the custody of the California Department of Corrections and Rehabilitation. When Surety filed its motion in this case, VINELink[4] showed Williams was in custody at the Deuel Vocational Institution in Tracy, California.

**PROCEEDINGS**

On March 5, 2013, the trial court entered a "BOND SUMMARY JUDGMENT" against Surety in the principal sum of $25,000 on Bond #044. A copy of the judgment was mailed the next day to Surety.

On March 6, 2013, the bail agent went to the clerk's office at the courthouse, asked if Williams's file had been located, and was told it had been located and there was no exoneration in the file for the bail agent's bond.

On March 7, 2013, Surety filed a motion to toll time or vacate the forfeiture and exonerate the bail bond. Four days later, counsel for the County of Fresno filed an

---

**4** A printout of the information obtained from the VINELink website was attached to a declaration filed in support of Surety's motion. VINELink is the online version of the Victim Information and Notification Everyday, the National Victim Notification Network. Information about the custody status of an adult inmate with the California Department of Corrections and Rehabilitation can be obtained by calling a toll-free number of the Office of Victim & Survivor Rights & Services or visiting VINELink at www.vinelink.com.

opposition to the motion and argued that the motion was untimely because it was not filed within the 185-day appearance period.

On March 15, 2013, Surety filed an amended notice of motion, which added a request that the March 5, 2013, summary judgment on Bond #044 be set aside.

In May 2013, the trial court held a hearing on Surety's motion. At the end of the hearing, the trial court stated:

> "The motion is denied. The bail agency has not established good cause as to why the motion was not filed within the appearance period. It's also denied [because] there's no competent evidence the defendant was arrested in the underlying case within the 185-day appearance period."

Subsequently, the court entered a minute order stating: "Motion denied." Surety appealed.

## DISCUSSION

I.      APPEALABILITY AND STANDARD OF REVIEW

A.      Appealable Orders

An order denying a motion to set aside summary judgment on a bail bond forfeiture is an appealable order. (*People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1, 5, fn. 4.) Similarly, an order denying a motion to discharge a forfeiture is an appealable order. (*People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1382.) Therefore, the trial court's May 24, 2013, order denying Surety's motion is appealable.

B.      Standard of Review

"Ordinarily, appellate courts review an order denying a motion to vacate the forfeiture of a bail bond under an abuse of discretion standard. [Citation.] When the appellate court is deciding only legal issues, however, such as … matters of statutory interpretation, the abuse of discretion standard does not apply. [Citation.] When the facts are undisputed and only legal issues are involved, appellate courts conduct an

independent review." (*People v. International Ins. Co.* (2012) 204 Cal.App.4th 588, 592.)

In contrast, when there are factual disputes, the trial court's findings of fact will be upheld under the abuse of discretion standard when those findings are supported by substantial evidence. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711 [abuse of discretion standard applied to motion to recuse a prosecutor].)

II.    OVERVIEW OF STATUTORY SCHEME

A.    Bail Bonds

Bail bonds are regarded as a contract between the government and the surety. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657 (*American Contractors*).) "'In general the state and surety agree that if the state will release the defendant from custody, the surety will undertake that the defendant will appear personally and at a specified time and place....'" (*People v. Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356.) Thus, the surety acts as guarantor of the defendant's appearance in court under risk of forfeiture of the bond. (*American Contractors*, *supra*, at p. 657.)

The contractual foundation of bail bonds is reflected in the principle that bail bond proceedings are civil in nature and independent from and collateral to the criminal prosecutions. (*American Contractors*, *supra*, 33 Cal.4th at p. 657.) The object of bail and the incentive created by its possible forfeiture is to ensure the appearance of the defendant. (*Ibid.*) Bail's purpose is not to generate revenue for the state or to punish the surety. (*Ibid.*)

B.    Forfeiture

The law disfavors forfeitures in general and bail forfeitures in particular. (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 714.) Thus, as a general rule, the statutes governing bail are strictly construed to avoid forfeiture. (*Ibid.*) This policy of

7.

strict construction to avoid forfeitures protects the surety "and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody …."  (*County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62.)

The bail forfeiture statute provides that when a criminal defendant for whom bail has been posted fails to appear, the trial court shall declare in open court that the undertaking of bail is forfeited.  (§ 1305, subd. (a).)  Thereafter, the surety that posted the bond has a 185-day statutory period (sometimes call the exoneration or appearance period) in which to produce the defendant in the court where the case is located and have the forfeiture set aside.  (*People v. Western Ins. Co.* (2012) 204 Cal.App.4th 1025, 1030.)

### C.      Relief from Forfeiture

As an alternative to producing the defendant in the court where the case is pending, the surety may attempt to demonstrate other circumstances requiring the court to vacate the forfeiture.  (*People v. Western Ins. Co.*, *supra*, 204 Cal.App.4th at p. 1030.)  The particular circumstances that justify vacating a forfeiture order and exonerating the bond are set forth in section 1305, subdivision (c).  This appeal relates to section 1305, subdivision (c)(3), which provides:  "If, outside the county where the case is located, the defendant is surrendered to custody by the bail or is *arrested in the underlying case* within the 180-day period, the court shall vacate the forfeiture and exonerate the bond."  (§ 1305, subd. (c)(3), italics added.)  The term "arrest" includes "a hold placed on the defendant in the underlying case while he or she is in custody on other charges."  (§ 1305, subd. (i).)

The California Supreme Court addressed section 1305, subdivision (c)(3) and the policy of strict construction to avoid forfeiture and concluded "that motions [for relief from bail forfeiture] under section 1305(c)(3) were meant to be *filed within the 180-day period*, unless the period is extended.  The policy disfavoring forfeiture cannot overcome

8.

the plainly intended meaning of the statute." (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 308 (*Indiana Lumbermens*).)

The 185-day appearance period may be extended for up to 180 days from the date of the order upon a showing of good cause (§ 1305.4).[5] Other types of forfeiture relief include those adopted by the Legislature in 2012 (after the *Indiana Lumbermens* decision) and codified in section 1305.6. Subdivision (b) of section 1305.6, states:

> "*Upon a showing of good cause*, a motion brought pursuant to paragraph (3) of subdivision (c) of Section 1305 [to vacate the forfeiture and exonerate the bond] may be filed within 20 days from the mailing of the notice of entry of judgment [of forfeiture] under Section 1306." (Italics added.)

Section 1305, subdivision (c)(3) covers defendants who are in custody on other charges outside the county where the case is located and have had a hold placed on them in the case in which the bond was issued. (See § 1305, subd. (i) [definition of "arrest" includes holds].)

The Legislative Counsel's Digest summarized subdivision (b) of section 1305.6 by stating it "would authorize, upon showing of good cause and within 20 days from the mailing of notice of entry of judgment, the filing of a motion to vacate the forfeiture and exonerate the bond where the defendant is secured outside the county where the case is

---

[5]     Section 1305.4 provides in full: "Notwithstanding Section 1305, the surety insurer, the bail agent, the surety, or the depositor may file a motion, based upon good cause, for an order extending the 180-day period provided in that section. The motion shall include a declaration or affidavit that states the reasons *showing good cause* to extend that period. The court, upon a hearing and a *showing of good cause*, may order the period extended to a time not exceeding 180 days from its order. A motion may be filed and calendared as provided in subdivision (j) of Section 1305. In addition to any other notice required by law, the moving party shall give the prosecuting agency a written notice at least 10 court days before a hearing held pursuant to this section as a condition precedent to granting the motion."

filed, as provided above." (Legis. Counsel's Dig., Assem. Bill No. 1824 (2011-2012 Reg. Sess.).)

### III. INTERPRETATION OF SECTION 1305.6'S "GOOD CAUSE" REQUIREMENT

This appeal presents two main issues. First, what does the good cause requirement mean in this context? Second, under that meaning, was good cause established by the facts of this case? The first question involves statutory construction.

#### A. Basic Principles of Statutory Construction

A reviewing court's fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (*Honchariw v. County of Stanislaus* (2011) 200 Cal.App.4th 1066, 1073, citing *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977.) This task begins by scrutinizing the actual words of the statute, giving them their usual, ordinary meaning. (*Honchariw v. County of Stanislaus*, *supra*, at p. 1073.)

When statutory language is susceptible to more than one reasonable interpretation, it is regarded as ambiguous and courts must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. (*Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th at p. 1073.) Courts determine the apparent intent of the Legislature by evaluating a variety of extrinsic aids, including the ostensible objects to be achieved by the statute, the evils to be remedied, the statute's legislative history, and public policy.[6] (*Ibid.*) Furthermore, the

---

[6]    In this case, neither party has presented legislative history to support their positions. This court reviewed the legislative history for Assembly Bill No. 1824 (2011-2012 Reg. Sess.) available on the website maintained by the Legislative Counsel of the State of California that is labeled "Official California Legislative Information" and did not find any attempt to define "good cause" in those materials. (<http://leginfo.ca.gov/>)

ambiguous language must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [ambiguous language is read in light of the statutory scheme, rather than in isolation].)

### B. The Meaning of Good Cause

#### 1. *Flexible, Ambiguous Term*

Beginning with the actual words of the statutes, we note that section 1305.6 and the other bail statutes do not include a full or partial definition of the term "good cause."[7]

The absence of a statutory definition of good cause has lead the parties to agree that the good cause requirement in section 1305.6, subdivision (b) is ambiguous—that is, reasonably susceptible to more than one meaning. Respondent states that this is a classic example of an ambiguity in a statute. Surety argues that the concept of good cause "is nebulous, because it can apply to a wide variety of statutory schemes and circumstances."

We agree with the parties that the term "good cause" is ambiguous in this context. (*People v. McGirr* (1988) 198 Cal.App.3d 629, 636 ["good cause" is a flexible phrase,

---

Consequently, we have not pursued our own motion for judicial notice of the legislative history. (See Evid. Code, § 459 [judicial notice by reviewing court].)

[7] Generally, there are two types of partial statutory definitions of good cause. One type identifies reasons that, in themselves, are *insufficient* to constitute good cause. (E.g., § 1050, subd. (e) [convenience of the parties or a stipulation by the parties does not establish good cause for continuing a criminal case].) The second type identifies some, but not all, reasons that constitute good cause. For example, Unemployment Insurance Code section 1328 provides that the 20-day period to appeal an eligibility determination "may be extended for good cause, which shall include, but not be limited to, mistake, inadvertence, surprise, or excusable neglect."

capable of being expanded or contracted by judicial construction].)[8] To resolve this ambiguity, we must select the interpretation that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute. (*Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th at p. 1073.)

### 2. *Good Cause in General*

The California Supreme Court adopted the following general principles about good cause requirements: "The concept of good cause should not be enshrined in legal formalism; it calls for a factual exposition of a reasonable ground for the sought order. The good cause may be equated to a good reason for a party's failure to perform that specific requirement from which he seeks to be excused." (*Waters v. Superior Court* (1962) 58 Cal.2d 885, 893.)

Along similar lines, the First Appellate District stated that "the essential ingredients of reasonable grounds and good faith" are at the nucleus of the concept of

---

[8] The term "good cause" is used in many different statutes and rules. (E.g., Code Civ. Proc., § 863 [reverse validation action is dismissed if plaintiff fails to comply with publication of notice requirement "unless good cause for such failure is shown"]; Pen. Code, §§ 1050, 1382, subd. (a) [good cause for a continuance]; Pub. Res. Code, § 21167.6, subd. (h) [extension of time to file appellate brief requires showing of good cause]; Cal. Rules of Court, rule 8.63 [factors appellate court must consider in determining good cause for an extension of time].)

The various interpretations given the many good cause requirements have generated numerous law review articles. (E.g., Blocher, *Good Cause Requirements for Carrying Guns in Public* (2014) 127 Harv. L.Rev. F. 218; Note, *Rethinking the "Good Cause" Requirement: New Federal Approach to Granting Protective Orders Under F.R.C.P. 26(c)* (2007) 42 Val. U. L.Rev. 291, 302-306 [four divergent methods for determining good cause]; Comment, *Good Cause in the Texas Rules of Civil Procedure* (2005) 36 St. Mary's L.J. 445 [three different standards for good cause]; Note, *Are Landlords Being Taken by the Good Cause Eviction Requirement?* (1988) 62 S. Cal. L.Rev. 321; Note, *Constitutional Obstacles to State "Good Cause" Restrictions on Franchise Terminations* (1974) 74 Colum. L.Rev. 1487; Williams, *The Good-Cause Requirement of California Discovery Procedure* (1968) 20 Stan. L.Rev. 594.)

good cause. (*R. J. Cardinal Co. v. Ritchie* (1963) 218 Cal.App.2d 124, 145.) This view of good cause contains an objective component (i.e., reasonable grounds) and a subjective component (i.e., good faith).[9]

For purposes of subdivision (b) of section 1305.6, we conclude "good cause" contains an objective and subjective component. If the Legislature wished to include only an objective component, it would have used a term such as "reasonable cause" instead of "good cause."

### 3. Comparison to Section 1305.4's Good Cause Requirement

Both parties have referred to the good cause requirement in section 1305.4 as an indicator of the Legislature's intent when it put a good cause requirement in section 1305.6. Section 1305.4 provides that a surety, upon a showing of good cause, may obtain an order extending the appearance period for up to 185 days from the date of the order. This good cause requirement was explained by the court in *People v. Accredited Surety & Casualty Co., Inc.* (2006) 137 Cal.App.4th 1349:

> "The good cause showing under section 1305.4 is a low threshold for the movant. If the surety demonstrates good cause by showing [1] due diligence in the initial 180 days, [2] a reasonable likelihood of success of capturing the defendant in a subsequent 180 days, and [3] any other relevant circumstances, the court should grant the motion." (*Id.* at p. 1358.)

The diligence prong is established when the surety shows it diligently attempted to locate and capture the defendant during the initial appearance period. (*People v. Accredited Surety & Casualty Co., Inc.*, *supra*, 137 Cal.App.4th at p. 1356.)

---

[9] Subjective good faith means a state of mind denoting honesty of purpose and freedom from intention to defraud or mislead. (*Langhorne v. Superior Court* (2009) 179 Cal.App.4th 225, 239.) The existence of good faith involves a factual inquiry into the party's subjective state of mind, a fact that rarely is susceptible to direct proof and, therefore, involves the court examining the circumstances that existed at the time of the action in question and drawing inferences from those circumstances about the party's state of mind. (*Id.* at p. 238.)

We conclude that the good cause requirement in section 1305.4 provides a useful comparison because both section 1305.4 and section 1305.6, subdivision (b) involve extensions of time for setting aside a forfeiture of bail. The extensions, however, are dissimilar as to length and purpose. Under subdivision (b) of section 1305.6, the extension is only 20 days and the purpose is limited to filing a motion under subdivision (c)(3) of section 1305—the provision regarding defendants held in custody outside the county where bail was granted. Because extension available under subdivision (b) of section 1305.6 is shorter and narrower, we conclude that provision's "good cause" requirement requires a lesser showing than the good cause requirement in section 1305.4. The justification for a relatively short, narrow extension need not be as demanding as the justification for an extension that doubles the length of the appearance period.

### 4.    *Respondent's Proposed Test*

Respondent proposes the following test for good cause under section 1305.6, subdivision (b):

> "Good cause requires a moving party: (1) to show that the defendant was surrendered to custody by the bail or was arrested in the underlying case, outside the county where the case is located, during the [appearance] period; (2) to explain what efforts were made to file a motion to vacate forfeiture pursuant to section 1305, subdivision (c)(3), during the [appearance] period; (3) to explain why efforts to file the motion within the [appearance] period failed; and (4) to show why such a failure was the result of defendant's custodial status."

We reject this proposed test for good cause because, contrary to our Supreme Court's guidance, it is "enshrined in legal formalism." (*Waters v. Superior Court*, *supra*, 58 Cal.2d at p. 893.) One shortcoming of formalistic prerequisites for this particular good cause requirement is that they may result in rigidity that excludes situations where an extension is appropriate. For example, the fourth proposed element requiring the absence of a timely motion to vacate the forfeiture to be caused by the defendant's custodial status implies that all failures to file a motion are unreasonable per se when they

do not result from the defendant's custodial status. The absolutism of this implied position is unwarranted because no basis exists in this record for us to adopt, in effect, a categorical finding of unreasonableness. Moreover, it is unclear how respondent's proposed fourth element could be satisfied in practice because it is difficult to imagine a situation where the defendant's custody in one county acts as a barrier to a surety or bail agent filing paperwork with a clerk of court in another county. Thus, respondent's proposed test for good cause appears to create a higher threshold than the test for good cause under section 1305.4, a position we have concluded is inappropriate given the length and purpose of the extensions in the respective statutes. (See pt. III.B.3, *ante*.)

In summary, respondent's four-element test for good cause is not appropriate for the circumstances addressed by subdivision (b) of section 1305.6.

### 5. *Surety's Approach*

Surety contends that once a defendant has been located and is in custody in another county, the purpose of bail has been fulfilled. In such a situation, Surety argues "it is not a question of what was done but instead **why** a motion for relief from forfeiture was not filed." Surety notes the reasons why no motion was filed can be varied and numerous and, therefore, the good cause requirement should not be interpreted to limit those reasons to any particular type or circumstance. Consequently, Surety contends "[w]hat constitutes 'good cause' depends largely upon the circumstances of each case." (*Bartlett Hayward Co. v. Indus. Acc. Com.* (1928) 203 Cal. 522, 532.)

Surety has not urged this court to adopt a particular test for good cause. For example, it has not argued that it would be entitled to the 20-day extension to file its motion if it showed that the reason it failed to file its motion during the appearance period constituted excusable neglect. (See *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 345-346 [good cause under Code Civ. Proc., § 863 equated with excusable neglect].)

Similarly, Surety has not argued for a test for good cause that is more lenient than excusable neglect, such as contending good cause "is established by showing that the failure to file was not intentional or the result of a conscious disregard of the obligation to timely file. In other words, even a slight excuse is sufficient. The standard may even be satisfied by mere accident or mistake." (Comment, *Good Cause in the Texas Rules of Civil Procedure*, *supra*, 36 St. Mary's L.J. at pp. 451-452, footnotes omitted.) This particular standard of good cause "requires nothing more than a mere showing of negligence or mistake .…" (*Id*. at p. 462.)

### 6. Summary of Conclusions

"Good cause" under subdivision (b) of section 1305.6 is established by showing the surety acted (1) reasonably and (2) in good faith. (See pt. III.B.2, *ante*.) Because we rejected respondent's proposed test and Surety did not articulate a specific test, we will analyze these two components using the general principle that "[w]hat constitutes 'good cause' depends largely upon the circumstances of each case" (*Bartlett Hayward Co. v. Indus. Acc. Com.*, *supra*, 203 Cal. at p. 532; see *People v. Hajjaj* (2010) 50 Cal.4th 1184, 1197 [good cause requirement involves applying principles of common sense to the totality of circumstances].)

### C. Analysis of Facts Presented

#### 1. Subjective Good Faith

There are no facts in the record that suggest the bail agent was acting dishonestly or attempting to mislead anyone when he did not file a motion to vacate the forfeiture during the appearance period. Therefore, we will infer that the bail agent acted in good faith and, as a result, Surety has satisfied the subjective component of the good cause requirement.

16.

### 2. *Reasonableness—the Transfer to Fresno*

The analysis of the reasonableness of the bail agent's decision not to file a motion during the appearance period is difficult because the information presented to the court was incomplete.

Surety's appellate briefing asserts "the agent justifiably believed that defendant would be transferred from Sacramento to Fresno County." As support, Surety cites only the following sentence in the bail agent's May 2013 declaration: "Based on my prior experience with defendants in custody, I believed that the defendant would be shipped back to Fresno once his case was completed in Sacramento."

One gap in Surety's evidence concerns the grounds for the bail agent's belief that Sacramento County would transfer Williams to Fresno County, instead of elsewhere. The printout of the information the bail agent obtained from the Sacramento County Inmate Information System shows that Williams had outstanding warrants from Marin and Solano Counties. The bail agent's declaration provides no reason why Fresno County would be given priority over the two closer counties.

Another gap in the evidence concerns the basis for the bail agent's belief that Sacramento County would ship Williams to another county, rather than sending him to state prison if convicted. The bail agent's declaration stated his belief was based on "my experience with defendants in custody." However, his declaration also stated: "I am a new bail agent and inexperienced with working with the courts." These two statements about his experience and inexperience create a legitimate question about whether the bail agent acted reasonably when he inferred that Sacramento would transfer Williams to Fresno County. Without some factual information about the bail agent's particular experiences, we cannot find it was reasonable for the bail agent to believe Sacramento County would transfer Williams to another county after his case there was completed.

17.

Another gap in Surety's brief and the bail agent's declaration is the lack of an explanation for the bail agent's apparent belief that Williams would be transferred to Fresno County *before the appearance period expired*. We will assume for the sake of argument that if the bail agent reasonably believed Williams would have been transferred to Fresno County before the appearance period expired, then the bail agent would have been justified in not expending the resources necessary to file a motion.[10] The bail agent's declaration stated he confirmed Williams was in custody in Sacramento on December 7, 2012. At that point, there were 77 days left in the appearance period. Why the bail agent believed the new charges against Williams would be resolved and a transfer to another county completed before February 22, 2013, is unexplained.

Based on the record before us, we cannot find the bail agent reasonably believed Williams would be returned to Fresno County before the appearance period expired.

### 3. Reasonableness—Reliance on the Clerk's Office

Surety contends the bail agent attempted to obtain information from the clerk's office in Fresno, but was given incomplete and inaccurate information.

For instance, Surety's reply brief asserts: "In addition to the clerk's misrepresentation that the bond had been exonerated, the court file was misplaced, so that the bail agent had no way of verifying the correctness of the minute order." The purported misrepresentation apparently refers to the following statement in the bail agent's declaration: "The clerk then printed me out a minute order showing the exoneration of the bail bond. [¶] … [¶] About a week later [my general agent] called me and informed me that the exoneration I had picked up in Fresno was for a prior bond posted on this defendant by All Pro Bail Bonds."

---

**10** The paperwork involved in filing a motion does not appear to be needed in such circumstances because section 1305, subdivision (c)(1) provides that if a defendant appears in court within the appearance period while in custody after arrest, the court, on its own motion, shall vacate the forfeiture of the bond.

18.

The declaration does not state the clerk told the bail agent his bond was exonerated. Instead, the declaration refers to "a *minute order* showing the exoneration of the bail bond." (Italics added.) The bail agent did not attach a copy of the minute order to his declaration. Consequently, we do not know the contents of that minute order and cannot evaluate whether the bail agent reasonably relied on it to conclude that Bond #044 had been exonerated. It appears that the general agent was able to determine the minute order related to a different bond and not Bond #044. The general agent might have been able to reach this conclusion if the minute order was dated before the issuance of Bond #044. In any event, precisely how the general agent determined the minute order related to a different bond is not explained by the evidence presented and we can only speculate whether the bail agent acted reasonably in drawing the erroneous conclusion that Bond #044 had been exonerated.

Therefore, the reference in Surety's reply brief to "the clerk's misrepresentation" is not supported by the record before us and does not provide a basis for finding the bail agent reasonably believed Bond #044 had been exonerated.

In addition, Surety's assertion that the bail agent had no way of *verifying the correctness* of the minute order assumes the minute order was incorrect in some regard. Again, without a copy of the minute order, we cannot evaluate this assertion or make a finding of fact that the information contained in the minute order was incorrect.

Lastly, the claim that the bail agent had "no way" of determining whether Bond #044 had been exonerated because the file had been misplaced by the clerk's office is unconvincing. Surety has not explained why the bail agent believed Bond #044 might have been exonerated in the first place. It appears unlikely that the bond would have been exonerated without a motion or an appearance in court by Williams. The bail agent knew he had not filed a motion and could have obtained information about the location of Williams from the Sacramento County Inmate Information System or the Fresno County

19.

Sheriff's Office. Why these potential sources of information were not used by the bail agent is not explained in his declaration.

Based on the lack of information in the bail agent's moving papers, we conclude the trial court did not err when it stated: "The bail agency has not established good cause as to why the motion was not filed within the appearance period." More specifically, Surety has not established its decision to wait until after the expiration of the appearance period to file a motion was reasonable under the totality of the circumstances.[11]

## DISPOSITION

The order denying Surety's motion is affirmed. Respondent shall recover its costs on appeal.

_____
Franson, J.

WE CONCUR:

_____
Kane, Acting P. J.

_____
Peña, J.

---

[11] Because of our conclusions on the issue of good cause, we need not address the alternate basis for the trial court's decision—namely, that there was no competent evidence that a hold was placed on Williams for this particular case.