Filed 7/14/17 Certified for Publication 8/10/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>FINANCIAL CASUALTY & SURETY, INC.,<br><br>        Defendant and Appellant. | A145568, A146916<br><br>(City & County of San Francisco Super. Ct. Nos. 14010983, CPF15514441) |

In this consolidated appeal, Financial Casualty & Surety, Inc. (FC Surety) appeals two orders denying it relief from the forfeiture of a $150,000 bail bond. The trial court denied FC Surety's bail agent's initial motion to vacate the forfeiture under Penal Code section 980, subdivision (b).[1] The trial court also denied FC Surety's motion to set aside the summary judgment issued when FC Surety failed to exonerate the bond within the statutory period. FC Surety contends it was entitled to tolling of the appearance period under section 1305, subdivision (e); vacation of forfeiture due to defendant's custody and good cause under section 1305.6, subdivision (b); and untimeliness of summary judgment under section 1306, subdivision (c). We agree FC Surety had valid grounds for relief under section 1305.6, subdivision (b), so we reverse.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

1

## BACKGROUND

FC Surety, through its bail agent, Bail Hotline Bail Bonds, posted $150,000 bail to secure Carlos Ventura's release from custody in San Francisco.

On September 15, 2014, when Ventura failed to appear in court, the San Francisco Superior Court issued a bench warrant and declared the bond forfeited. Notice of the forfeiture was mailed on October 7, 2014. The notice stated FC Surety's "contractual obligation to pay th[e] bond [would] become absolute on [April 10, 2015], the 185th day following the date of mailing of this NOTICE unless the court shall sooner order the forfeiture set aside."

On March 12, 2015, FC Surety's bail agent discovered Ventura was in custody in Contra Costa County. The bail agent tried to surrender the warrant issued by the San Francisco Superior Court and have Ventura held and arrested for the San Francisco case. Twice, the bail agent asked the Contra Costa County Sheriff to run Ventura's identity for active warrants. On both occasions, the Contra Costa County Sheriff found none, in spite of verification the bail agent received from the San Francisco Sheriff that there was an active bench warrant issued by the San Francisco court.

On April 3, 2015, the bail agent moved to vacate the forfeiture and exonerate the bond. The bail agent argued the failure to enter the San Francisco bench warrant into the National Crime Information Center as required was a data entry error that prevented Ventura from being arrested for the San Francisco case and required exoneration of liability on the bond pursuant to section 980, subdivision (b). The bail agent asserted no alternative statutory basis for relief. But the caption page, beneath the motion title, stated "P.C. § 980(b), 1305(e)" in brackets.

On April 27, 2015, the trial court denied the motion to vacate forfeiture and exonerate bail because the bench warrant remained outstanding. The bail agent then orally requested the court to extend the statutory time to secure Ventura's appearance under section 1305.4. Absent a request in writing, the court denied the oral motion.

On May 8, 2015, FC Surety, represented by new counsel, filed a reconsideration motion. In part, FC Surety asked the court to toll the appearance period pursuant to Penal

2

Code section 1305, subdivision (e), which had been referenced in the initial motion. The trial court heard and denied FC Surety's reconsideration motion on June 16, 2015. Two days later, FC Surety appealed the April 27, 2015 order in appeal number A145568.

On August 19, 2015, in the absence of any order setting aside the forfeiture, the court issued summary judgment on the bail forfeiture for $150,000, plus fees, pursuant to section 1306. On August 21, 2015, the court mailed notice of the judgment.

On September 9, 2015, FC Surety e-filed its motion to set aside summary judgment, discharge forfeiture, and exonerate the $150,000 bail. FC Surety argued section 1305, subdivision (c)(3) required the court to exonerate bail because Ventura had been arrested in Contra Costa County and FC Surety first learned on June 19, 2015, that the San Francisco warrant had actually been served during the appearance period. It also argued section 1305.6, subdivision (b) allowed it to file its motion within 20 days of the court's notice of entry of summary judgment. In addition, it informed the court that Ventura was then in custody in San Francisco County.

On October 27, 2015, the trial court heard the motion and denied it the next day. In its written order, the court stated, "Even if the court tolled the 180-day period due to [Ventura's incarceration], the court still entered summary judgment within 90 days of [FC Surety's] Motion for Reconsideration. Defendant also untimely filed their instant motion. Motions under section 1305(c)(3) were meant to be filed within the 180-day period, unless the period is extended."

On November 9, 2015, FC Surety appealed this order in appeal number A146916. In response to the People's unopposed motion, we consolidated appeals A145568 and A146916 for purposes of briefing, oral argument, and a decision.

## DISCUSSION

### A. Bail Bond Forfeitures and Relief from Forfeiture

A bail bond " 'is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.' " (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657 (*American Contractors*).)

3

The statutory scheme governing bail forfeitures provides that: If a criminal defendant out on bail fails to appear in court when lawfully required to do so, the trial court must declare the bail forfeited. (§ 1305, subd. (a)(1).) The clerk must mail notice of forfeiture to the surety for bonds over $400, and then the surety has 180 days, plus an additional 5 days for mailing, to bring the criminal defendant into court. (§ 1305, subds. (b)-(c).) These 185 days are known as the appearance period. (*People v. The North River Ins. Co.* (2011) 200 Cal.App.4th 712, 718 (*North River*).) Under section 1305.4, the surety may seek an extension of the appearance period of up to another 180 days upon a showing of good cause. (§ 1305.4.) Under section 1305, subdivision (e)(1), the appearance period can be tolled in the case of a "temporary disability." (§ 1305, subd. (e)(1).) Detention by civilian authorities or incarceration in another jurisdiction is considered a temporary disability. (*People v. Lexington National Insurance Corp.* (2010) 181 Cal.App.4th 1485, 1491 (*Lexington*).)

During the appearance period, the surety is entitled to move to have the forfeiture vacated and the bond exonerated on grounds specified in the statute. (§ 1305, subd. (c)(1); *American Contractors*, *supra*, 33 Cal.4th at p. 658.) One such ground is set forth in section 1305, subdivision (c)(3), which requires the court to vacate forfeiture and exonerate bail "[i]f, outside the county where the case is located, the defendant is surrendered to custody by the bail agent or is arrested in the underlying case within the 180-day period." (§ 1305, subd. (c)(3).)

If, at the end of the appearance period, forfeiture has not been vacated, the trial court must enter summary judgment against the surety. (§ 1306, subd. (a).) Under section 1305.6, "upon a showing of good cause," a surety may file a section 1305, subdivision (c)(3) motion "within 20 days from the mailing of the notice of entry of judgment under Section 1306." (§ 1305.6, subd. (b).)

"The purpose of bail and of its forfeiture . . . is to ensure the accused's attendance and obedience to the criminal court, not to raise revenue or to punish the surety." (*People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 42.)

## B. Standard of Review

"[A]s a general rule, the statutes governing bail are strictly construed to avoid forfeiture." (*People v. Accredited Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 556 (*Accredited*).) "The law disfavors forfeitures in general and bail forfeitures in particular . . . . This policy of strict construction to avoid forfeitures protects the surety 'and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody.' " (*Id.* at p. 555–556, citation omitted.)

Regarding the particular standard of appellate review in this case, the parties disagree. FC Surety contends our review here is de novo "since there are no factual disputes and the issue is purely legal." The People, however, contend we review for abuse of discretion. Both parties are correct to a degree.

"Ordinarily, appellate courts review an order denying a motion to vacate the forfeiture of a bail bond under an abuse of discretion standard. [Citation.] When the appellate court is deciding only legal issues, however, such as jurisdictional questions and matters of statutory interpretation, the abuse of discretion standard does not apply. [Citation.] When the facts are undisputed and only legal issues are involved, appellate courts conduct an independent review." (*People v. International Fidelity Insurance Co.* (2012) 204 Cal.App.4th 588, 592.)

The parties do not engage in any substantive argument on the controlling standard in this case. We need not reconcile the differences, since under either the abuse of discretion standard or de novo review, the result here would be the same.

## C. Section 1305.6, subdivision (b)

As one of its grounds for reversal, FC Surety argues the trial court erred by denying its motion to set aside summary judgment, discharge forfeiture, and exonerate bail, which sought substantive relief under section 1305, subdivision (c)(3) because Ventura was in custody in another county. Pursuant to section 1305.6, subdivision (b), it contends its motion was timely filed and supported by good cause. We agree.

As explained above, following summary judgment on a bond forfeiture, section 1305.6, subdivision (b), authorizes a section 1305, subdivision (c)(3) motion to be filed

5

"[u]pon a showing of good cause . . . [and] within 20 days from the mailing of the notice of entry of judgment under section 1306." (§ 1305.6, subd. (b).)

The trial court ruled FC Surety's motion was untimely. On appeal, the People offer no defense of the court's timeliness analysis under section 1305.6, subdivision (b). Rather, the People posit that even if FC Surety's motion was timely, relief under section 1305.6 was still improper because the surety failed to show good cause for not filing its motion within the appearance period. Not so.

First, FC Surety's motion was timely. To be timely under section 1305.6, subdivision (b), its motion had to be "filed within 20 days from the mailing of the notice of entry of judgment under section 1306." (§ 1305.6, subd. (b).) Here, the court mailed notice of entry of judgment on August 21, 2015. FC Surety had 20 days—until September 10, 2015—to file its section 1305, subdivision (c)(3) motion. (*Ibid.*) Notwithstanding the September 11, 2015 file-stamp on this motion, the record shows FC Surety electronically submitted its motion on September 9, 2015, at 5:30 p.m. and it was stamped once FC Surety had addressed an issue regarding payment of court reporter fees per local rules "A paper submitted before the close of the clerk's office on the day the paper is due is deemed timely filed." (Cal. Rules of Court, rule 3.1300(e).) Since the motion was deemed filed on September 10, 2015, the statutory deadline, it was timely. Further, "[i]f a document is presented to the clerk's office for filing in a form that complies with the rules of court, the clerk's office has a ministerial duty to file it. [Citation.] Even if the document contains defects, the clerk's office should file it and notify the party that the defect should be corrected." (*Voit v. Superior Court* (2011) 201 Cal.App.4th 1285, 1287.) In light of the evidence of a timely electronic submission, the trial court erred in ruling FC Surety's motion untimely.

Second, FC Surety also demonstrated good cause. *Accredited, supra*, 230 Cal.App.4th 548 the only published case available on section 1305.6 (enacted in 2012), analyzed the good cause requirement as a matter of first impression. (*See id.* at p. 557.) Both parties cite to its good cause standard, which we apply. Under *Accredited*, good cause "contains an objective component (i.e., reasonableness) and a subjective good faith

6

component.  In determining whether a surety acted reasonably and in good faith, courts must consider the totality of the circumstances and evaluate the reasons given by the surety for not filing a motion within the 185-day appearance period." (*Id.* at pp. 551–552.)  Good faith is inferred if "[t]here are no facts in the record that suggest the bail agent was acting dishonestly or attempting to mislead anyone when he did not file a motion to vacate the forfeiture during the appearance period." (*Id.* at p. 563.)

FC Surety's subjective good faith is easily established here.  There are no facts in the record showing FC Surety acted dishonestly or attempted to mislead anyone by not filing its section 1305, subdivision (c)(3) motion any earlier.  Therefore, we conclude FC Surety's bail agent acted in good faith and FC Surety satisfied the subjective component of the good cause requirement.  (See *Accredited*, *supra*, 230 Cal.App.4th at p. 563.)

The closer question is whether FC Surety's actions were objectively reasonable.  Again, we turn to *Accredited*.  In that case, bail was forfeited when the defendant failed to appear in the Fresno County Superior Court.  (*Accredited*, *supra*, 230 Cal.App.4th at p. 552.)  The bail agent subsequently learned the defendant had been arrested in Sacramento County and that a hold had been placed on him in the Fresno case.  (*Ibid.*)  The bail agent, however, did not file a section 1305, subdivision (c)(3) motion because he believed the defendant would be returned to Fresno prior to the expiration of the 180-day appearance period once his Sacramento case was completed.  (*Id.* at p. 553.)

Towards the end of the appearance period, the bail agent contacted the Fresno County court clerk several times to determine if the defendant had been returned to Fresno.  (*Accredited*, *supra*, 230 Cal.App.4th at p. 553.)  The defendant's file could not be located, but the bail agent received from the clerk a printed minute order showing the exoneration of a bail bond.  (*Ibid.*)  Later the bail agent learned the exoneration related to a prior bond issued by another surety, so he returned to the court to inquire about the correct bond but without success due to the lost file.  (*Ibid.*)  The day after the trial court entered summary judgment on the bond, the bail agent discovered the defendant's file had been located and the bond had not been exonerated.  (*Id.* at p. 554.)  The surety moved to set aside the summary judgment based on section 1305, subdivision (c)(3)

7

given the defendant was in custody in another jurisdiction. (*Ibid*.) The trial court denied relief. (*Ibid*.)

The Court of Appeal affirmed. (*Accredited*, *supra*, 230 Cal.App.4th at p. 566.) It concluded there was no good cause for the motion because the bail agent's conduct was not reasonable. (*Id.* at pp. 563–565.) The bail agent provided no basis for his belief Sacramento County would return the defendant to Fresno within the appearance period because he also had outstanding warrants in other counties. (*Id.* at pp. 563–564.) Nor could the court evaluate whether the bail agent acted reasonably in relying on the minute order stating a bond had been exonerated because the minute order was not included in the record on appeal. (*Id.* at p. 565.)

Here, in contrast to *Accredited*, there is enough evidence for us to conclude FC Surety's decision to not file a section 1305, subdivision (c)(3) motion within the appearance period was objectively reasonable. FC Surety's bail agent discovered Ventura was in custody in Contra Costa County on March 12, 2015. At that point, the record shows FC Surety's bail agent attempted to get the San Francisco warrant served in order to hold him and have him arrested for the San Francisco case. However, the Contra Costa County Sheriff twice informed the bail agent it had no warrants for Ventura in its system. In light of the Sheriff's persistent notice that there was no warrant for Ventura in the system, FC Surety's bail agent elected to seek exoneration of the bond under section 980, subdivision (b), which gives the trial court discretion to set aside a bail forfeiture if the defendant's warrant is not entered into the national system and if the court finds that this failure to enter the warrant prevents the fugitive from being arrested. (*People v. American Contractors Indemnity Co.* (1999) 76 Cal.App.4th 1408, 1417.) Unfortunately, the court concluded the bail agent failed to make the showing required under section 980 and its motion was denied on April 27, 2015, after the appearance period expired. FC Surety then replaced counsel, sorted out the discrepancies regarding the warrant, filed a motion to reconsider, and asserted other available grounds to vacate the forfeiture or toll the appearance period. Since there was a colorable basis to vacate the forfeiture under the section 980 motion based on the information originally supplied to the bail agent, and

8

because it had filed this motion within the appearance period, FC Surety proceeded reasonably.

The People contend FC Surety did not proceed in good faith or reasonably because it assumed the government made a mistake with the warrant, and based its entire strategy on that unwarranted assumption. The People also question why FC Surety did not fully investigate why Contra Costa County did not have a hold on Ventura from San Francisco or file a motion requesting all forms of relief alternative available. The People argue such conduct cannot be deemed reasonable.

None of the People's points go to good faith. "Subjective good faith means a state of mind denoting honesty of purpose and freedom from intention to defraud or mislead." (*Accredited*, *supra*, 230 Cal.App.4th at p. 560, fn. 9.) The People's criticisms do not impugn FC Surety's honesty or intentions but instead criticize its reliance on a singular legal theory under which the surety brought its first motion as unreasonable.

Here, the People raise fair points. In hindsight, FC Surety's approach to resolve the matter was easily capable of improvement. Had its bail agent earlier been able to confirm the fact that Ventura had actually been served the San Francisco warrant in Contra Costa County in March 2015, the surety could have probably secured the relief it has now taken three motions and a consolidated appeal to pursue. However, we will not conclude that FC Surety had to interrogate the Sheriff's clerks to pass the threshold of reasonableness. Based on the information it received from the Contra Costa County Sheriff, it pursued a viable avenue for relief that it believed would result in relief from forfeiture and exoneration of bail. We are not convinced FC Surety proceeded unreasonably in doing so, especially because forfeitures are disfavored.

The People also contend this case involves "almost the same facts" as *Accredited* and that FC Surety advances "a similar argument" as the surety in that case, in which the court denied the surety relief from forfeiture. We disagree. The People disregard the fact that FC Surety's bail agent made attempts to get the San Francisco warrant served on Ventura in Contra Costa County and twice was given incorrect information on Ventura's status by the Sheriff. In *Accredited*, the surety's conduct reflected a laissez-faire

9

approach with the operating assumption that bail would eventually be exonerated through the normal course of events.  Also, unlike FC Surety, the surety in *Accredited* never attempted to file a motion for relief within the appearance period on any basis.  The proactive steps undertaken by FC Surety's bail agent are enough to distinguish our case from *Accredited*.

Finally, the People contend FC Surety was not entitled to relief under section 1305.6 because it "did not file a section 1305(c)(3) motion within the 180-day appearance period."  The trial court's October 28, 2015 order rejected FC Surety's motion to set aside summary judgment, in part, on similar grounds.  The court stated, " '[M]otions under section 1305(c)(3) were meant to be filed within the 180-day period, unless the period is extended.  The policy disfavoring forfeiture cannot overcome the plainly intended meaning of the statute . . . failure to bring a timely motion results in a statutory bar to relief, not a windfall to the county.' (*People v. Indiana Lumbermans Mut. Ins. Co.* (2010) 49 Cal.4th 301, 308 [*Indiana Lumbermans*].)"  On this point, the People offer no further legal argument or authority so we are inclined to pass on it without consideration. (See *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050.)  However, we disagree with the trial court's comments.  Both the People and trial court's position controvert the plain language of section 1305.6, subdivision (b), which expressly authorizes "[u]pon a showing of good cause, a motion brought pursuant to paragraph (3) of subdivision (c) of Section 1305 . . . within 20 days from the mailing of notice of entry of judgment." (§ 1305.6, subd. (b).)  *Indiana Lumbermans*, *supra*, 49 Cal.4th at p. 301, the 2010 case cited by the trial court, does not even consider section 1305.6, which was enacted in 2012, and it provides no authority that limits its application.  Otherwise, the People cite no authority, nor have we found any, that supports its apparent position that a surety must file a section 1305, subdivision (c)(3) motion during the 180-day appearance period in order to avail itself of section 1305.6, subdivision (b).  Accordingly, this argument also does not bar the surety from filing its section 1305, subdivision (c)(3) motion as permitted by section 1305.6, subdivision (b) as long as the good cause and timeliness requirements were satisfied, which they were.

10

*D. Section 1305, subdivision (c)(3)*

Because we conclude that FC Surety's motion to set aside summary judgment, discharge forfeiture, and exonerate bail was timely and supported by good cause, we must next determine whether the surety should have been granted relief under section 1305, subdivision (c)(3). As noted, this provision provides that a court "shall vacate the forfeiture and exonerate the bail" "[i[f, outside the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case." (§1305, subd. (c)(3).) " '[A]rrest' includes a hold placed on the defendant in the underlying case while he or she is in custody on other charges." (§ 1305, subd. (i).) The record shows that on March 12, 2015, within the 185-day appearance period, upon Ventura's arrest in Contra Costa County, the warrant from the San Francisco case was served on Ventura and he was held, or arrested, for that matter. Moreover, FC Surety first learned the warrant was served in June 2015, after the court had declined to reconsider the motion for exoneration. These facts require that summary judgment be set aside, the forfeiture discharged, and the bond vacated.

Based on our decision, we need not address the other grounds FC Surety asserts for reversal.

## DISPOSITION

The October 28, 2015 order of the trial court denying FC Surety's motion to set aside summary judgment, discharge forfeiture, and exonerate bail is vacated. On remand, the trial court is to enter a new and different order vacating the forfeiture and exonerating all liability on bail bond number FCS250-1294399. The appeal of the April 27, 2015 order of the trial court (A145568) is moot. Each party is to bear its own costs on appeal.

11

_____
Siggins, J.

We concur:

_____
McGuiness, P.J.

_____
Jenkins, J.

*People v. Financial Casualty & Surety*, A146916, A145568

12

Filed 8/10/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FINANCIAL CASUALTY & SURETY, INC.,<br><br>    Defendant and Appellant. | A145568, A146916<br><br>(City & County of San Francisco<br>Super. Ct. Nos. 14010983,<br>CPF15514441)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

**THE COURT:**

The opinion filed in the above-entitled matter on July 14, 2017, was not certified for publication in the Official Reports. For good cause, the request for publication by defendant and appellant is granted.

Pursuant to rule 8.1105(b) of the California Rules of Court, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.

DATE: _____

                                                                Siggins, Acting P.J.

Trial Court:                                    San Francisco City and County Superior
                                                Court


Trial Judge:                                    Hon. Bruce E. Chan, Hon. Ernest
                                                Goldsmith


Counsel:

John Mark Rorabaugh, Alan E. Nunez, Robert Tomlin White, Adam Phillip Sostrin, for
Appellant.

Dennis J. Herrera, City Attorney, Cheryl Adams, Chief Trial Deputy, Diana Rosenstein,
Deputy City Attorney, for Respondent.