Filed 11/10/15  P. v. Continental Heritage Ins. Co. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B255579 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA397723) |
| v. | |
| CONTINENTAL HERITAGE INSURANCE COMPANY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Shelly Torrealba, Judge.  Affirmed.

Law Offices of Brendan Pegg and Brendan Pegg for Defendant and Appellant.

Mark J. Saladino, County Counsel, Mary C. Wickham, Interim County Counsel, and Brian T. Chu, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

# INTRODUCTION

Continental Heritage Insurance Company (Continental) appeals from an order denying its motion to vacate forfeiture and for exoneration of a bail bond. For the first time on appeal, Continental contends a mutual mistake of fact as to the actual identity of the individual for whom it posted bail is grounds for rescission of the bail contract. Continental further contends performance of the bail contract was rendered impossible when a police detective directed a bail investigator to cease his investigation into the whereabouts of the criminal defendant for whom bail was posted. We affirm.

# BACKGROUND[1]

On May 29, 2012, Acme Bail Bonds, acting as a licensed bail agent of Continental, posted a $200,000 bail bond (No. PC25000951379) for the release of a criminal defendant identified as Aladden Elfaki.[2] Unbeknownst to Continental, Aladden Elfaki was not the defendant's true name but rather was an alias. That same day, Elfaki failed to appear in court as required. The court ordered his bail forfeited, issued a bench warrant for his arrest, and set bail at $400,000. Notice of forfeiture was mailed to Continental and Acme on May 30, advising them that they had 185 days, or until December 1, 2012, to surrender Elfaki or to move to set aside the forfeiture.

---

[1]     Continental elected to proceed on appeal without a record of the oral proceedings in the trial court.

[2]     In a complaint filed on May 16, 2012, the People charged Elfaki with committing sex crimes in violation of Penal Code sections 288, subdivision (a), and section 288a, subdivision (c)(1).

2

On November 30, 2012, Continental filed a motion to extend time to return fugitive to custody, which was scheduled to be heard on December 21.[3] On December 21, the trial court granted Continental's motion and extended time to return the fugitive to custody for an additional 180 days from December 1 to May 30, 2013.

On June 20, 2013, after the exoneration period had expired, Continental filed a second motion to extend time to return the fugitive to custody.[4] On July 22, the court granted the motion and extended the time to October 31, an additional 154 days from May 30.

On October 31, 2013, Continental filed a motion to vacate forfeiture and for exoneration of bail bond, which was set for hearing on November 27. Continental stated that its "motion is made pursuant to case law and contract principles inasmuch as the County of Los Angeles provided the surety with false information regarding the identity of the defendant, and thereafter prevented the surety from access to records that would reveal the true identity of the person they had bailed."

More specifically, Continental argued that "[g]iving the surety a false (and nonexistent) name when entering into a bail agreement with the surety, renders performance by the surety impossible. The surety cannot be expect[ed] to locate an individual who has not been properly identified at the outset." Continental further maintained that a police detective's directive to an investigator to stop his investigation into the whereabouts of Elfaki and to stay away from Elfaki constituted "direct and

---

[3]    A court may extend the exoneration period only upon a showing of good cause. (Pen. Code, § 1305.4.) "To establish good cause, the surety must demonstrate both due diligence and a reasonable likelihood of recapture." (*People v. Accredited Surety Casualty* (2014) 230 Cal.App.4th 548, 560.) The declaration of Don Anderson submitted with the motion to extend the exoneration period contained information related to Anderson's efforts to find Elfaki. Anderson had ongoing information from individuals familiar with Elfaki and followed up on several sightings of him in Southern California.

[4]    Continental's June 20, 2013 motion to extend time to return fugitive to custody is not in the appellate record, and we have no way of determining what showing Continental made to support its motion.

3

wrongful interference . . . that rendered the bond void." Finally, Continental argued that the failure to enter Elfaki's warrant into the National Crime Information Center (NCIC) prevented it from surrendering the fugitive into custody and thus required exoneration.

On November 27, 2013, the trial court continued the hearing on the motion to vacate forfeiture and for exoneration of bail bond to December 17. On that day, the trial court received a notice from counsel for Continental asking the court to "proceed without appearance." No appearance having been made by Continental's attorney, the court ordered the motion off calendar.

On January 3, 2014, Continental filed another motion to vacate forfeiture and for exoneration of bail bond.[5] The matter, which was set for hearing on January 24, was continued to February 14. On February 14, Maria Grimeldo testified for the People,[6] and People's Exhibit No. 1, a certified document from the NCIC, was marked for identification but not received into evidence. The trial court denied the motion to exonerate the bond on grounds of misidentification and police interference[7] and determined that Elfaki's warrant was entered into NCIC on the date noted on page 12 of People's Exhibit No. 1.[8] Continental thereafter made an oral motion pursuant to Penal Code section 980, subdivision (b),[9] and further proceedings were continued to March 6.

---

[5]    This motion is not in the appellate record.

[6]    Without a reporter's transcript, Grimeldo's relevance and the content of her testimony are a mystery.

[7]    The trial court's rationale for denying the motion for exoneration of bail are unknown as we have no reporter's transcript and the minutes are silent on the court's rationale.

[8]    Because People's Exhibit No. 1 was not received into evidence and is not in the record on appeal, we have no way to determine the date to which the court referred.

[9]    Subdivision (b) of Penal Code section 980 provides: "The clerk shall require the appropriate agency to enter each bench warrant issued on a private surety-bonded felony case into the national warrant system (National Crime Information Center (NCIC)). If the appropriate agency fails to enter the bench warrant into the national warrant system

4

On March 6, 2014, after reading and considering the declaration of "M. Esparza"[10] submitted by Continental, the court denied Continental's motion to vacate the forfeiture based on Penal Code section 980,[11] the only remaining ground for the motion based on Continental's oral amendment at the prior hearing.

On March 12, the clerk of the superior court executed an application for entry of judgment and summary judgment against Continental on the forfeited bond. The same day, the court entered summary judgment in favor of the People and against Continental in the amount of $200,000, plus $370 in court costs for a total of $200,370.[12] On March

---

(NCIC), and the court finds that this failure prevented the surety or bond agent from surrendering the fugitive into custody, prevented the fugitive from being arrested or taken into custody, or resulted in the fugitive's subsequent release from custody, the court having jurisdiction over the bail shall, upon petition, set aside the forfeiture of the bond and declare all liability on the bail bond to be exonerated."

[10] In support of its October 31, 2013 motion to vacate forfeiture and for exoneration of bail bond, Continental submitted the declaration of Michael Esparza, among others. Because the declaration of "M. Esparza" submitted by Continental at the March 6, 2014 hearing is not in the record on appeal or identified in any other way, we have no way of knowing whether it was the same or a different declaration.

[11] Although the minutes do not state the court's findings or reasons for rejecting Continental's motion pursuant to Penal Code section 980, Continental does not challenge this portion of the trial court's ruling.

[12] The trial court acted in excess of its jurisdiction, but with fundamental jurisdiction, in extending the exoneration period for more than 180 days. (*People v. Bankers Ins. Co.* (2010) 182 Cal.App.4th 1377, 1380, 1382-1386.) While Continental does not challenge the timeliness of the summary judgment in its opening brief, the People, in footnote 4 of its Respondent's Brief, argue: "While the trial court may have exceeded its authority in granting a further extension of the appearance [or exoneration] period under [Penal Code] section 1305.4, Continental would be estopped from claiming that the subsequent summary judgment was untimely entered. (*People v. Bankers Ins. Co.*, *supra*, 182 Cal.App.4th at pp. 1382-1385.)" (Capitalization omitted.) The People are correct.

In *People v. Bankers Ins. Co.*, *supra*, 182 Cal.App.4th 1377, the trial court extended the exoneration period three times for a total of more than 180 days. As a result, the trial court entered summary judgment later than it was required to do so by statute. While the reviewing court concluded that the trial court exceeded its jurisdiction in extending the exoneration period more than 180 days and that the trial court granted

5

25, Continental filed a timely notice of appeal from the March 6 order denying its motion to vacate and set aside the bond forfeiture. Continental did not appeal from the summary judgment.

## DISCUSSION

### A. *Standard of Review*

We review the trial court's order denying Continental's motion to vacate forfeiture and exonerate bond for an abuse of discretion. (*People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1, 5.) A trial court abuses its discretion when, under the circumstances, its decision exceeds the bounds of reason. (*People v. Seneca Ins. Co.* (2004) 116 Cal.App.4th 75, 80.) The trial court's findings of fact will be upheld under the abuse of discretion standard if substantial evidence supports them. (*People v. Accredited Surety Casualty Co.*, *supra*, 230 Cal.App.4th at p. 555.)

### B. *Overview of Law Pertaining to Bail Forfeiture*

"While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature. [Citation.] 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' [Citations.]" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657.)

---

summary judgment after the time for entering summary judgment expired, it held that the surety was estopped from challenging the summary judgment as untimely. (*Id*. at pp. 1382, 1384, 1385-1386.)

Had Continental challenged the timeliness of the summary judgment, it too would be estopped from doing so. As the court in *Bankers Ins. Co.* aptly stated: "To permit the surety to have it both ways—to obtain more time to avoid forfeiture of the bond, and then to have the bond exonerated because the judge gave them more time—would be to allow an intolerable manipulation of the trial courts. This we cannot and will not condone." (*People v. Bankers Ins. Co.*, *supra*, 182 Cal.App.4th at p. 1386.)

A bail bond is a contract between the government and the surety. Under this contract, the surety acts as guarantor of the criminal defendant's appearance in court and risks forfeiture of the bond if the defendant fails to appear. (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 657; *People v. Accredited Surety Casualty Co.*, *supra*, 230 Cal.App.4th at p. 555; *People v. Western Ins. Co.* (2013) 213 Cal.App.4th 316, 322.)

"'The forfeiture or exoneration of bail is entirely a statutory procedure, and forfeiture proceedings are governed entirely by the special statutes applicable thereto. [Citation.] . . .' [Citation.] Because the law disfavors forfeitures, the bail statutes must be construed strictly to avoid forfeiture, and the procedures set forth therein must be '"precisely followed or the court loses jurisdiction and its actions are void."'" [Citations.]" (*People v. International Fidelity Ins. Co.* (2012) 212 Cal.App.4th 1556, 1561; accord, *People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 714; *People v. Accredited Surety Casualty Co.*, *supra*, 230 Cal.App.4th at pp. 555-556; *People v. Ranger Ins. Co.* (2000) 77 Cal.App.4th 813, 816.)

Penal Code section 1305 provides that the trial court "shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear" for arraignment, trial, judgment or any other occasion where his presence in court is lawfully required. (Pen. Code, § 1305, subd. (a).)

Once notice of forfeiture is mailed by the clerk of the court, the surety has 185 days in which to produce the criminal defendant in court and move to set aside the forfeiture. (Pen. Code, § 1305, subds. (b), (c)(1);[13] *County of Los Angeles v.*

_____

[13]     The trial court must vacate the order of forfeiture and exonerate the bond if within 180 days of the date of mailing the notice of forfeiture, the defendant appears voluntarily or in custody. (Pen. Code, § 1305, subd. (c)(1).) "If the notice of forfeiture is required to be mailed pursuant to this section, the 180-day period provided for in this section shall be extended by a period of five days to allow for the mailing." (Pen. Code, § 1305, subd. (b).) The surety, therefore, has 185 days to locate the defendant and bring him to court. (*People v. Accredited Surety & Casualty Co., Inc.* (2012) 203 Cal.App.4th 1490,

*Williamsburg National Ins. Co.* (2015) 235 Cal.App.4th 944, 950; *People v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, 150, fn. 3.) This 185-day period is known as the appearance or exoneration period. (*People v. Bankers Ins. Co.*, *supra*, 182 Cal.App.4th at p. 1380.) Upon a showing of good cause, the trial court may extend the appearance or exoneration period "to a time not exceeding 180 days from its order." (Pen. Code, § 1305.4; *County of Los Angeles v. Williamsburg National Ins. Co.*, *supra*, at p. 950.) "[T]he exoneration period can only be extended an additional 180 days once." (*People v. Granite State Insurance Co.* (2003) 114 Cal.App.4th 758, 768.)

If the exoneration period expires without the forfeiture being exonerated, the trial court must enter summary judgment against the surety in the amount of the bond plus costs within 90 days. If it fails to do so, the bond is exonerated. (Pen. Code, § 1306, subds. (a) & (c); *County of Los Angeles v. Williamsburg National Ins. Co.*, *supra*, 235 Cal.App.4th at pp. 950-951.)

### C. *Continental Has Failed To Provide an Adequate Record on Appeal*

The trial court's order denying Continental's motion to vacate the forfeiture and exonerate the bond is presumed to be correct on appeal. (*Ruelas v. Superior Court* (2015) 235 Cal.App.4th 374, 383; *Blevin v. Coastal Surgical Institute* (2015) 232 Cal.App.4th 1321, 1330.) We will "indulge all presumptions in favor of its correctness." (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1338.) "In keeping with that standard, we will infer findings in support of the judgment if such findings are supported by substantial evidence. [Citation.]" (*Ibid.*) The appellant bears the burden of overcoming the presumption of correctness. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207.) "'Obviously, . . . the presentation of a record which is clearly insufficient to enable a reviewing court to determine whether or not the trial court was correct in its ruling is not

---

1495, fn. 3; accord, *People v. Accredited Surety Casualty Co.*, *supra*, 230 Cal.App.4th at p. 551, fn. 2.)

8

the equivalent of demonstrating that the trial court was in error.'" (*Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 122-123.)

Inasmuch as this is an appeal from the order denying Continental's January 3, 2014 motion to vacate forfeiture and exonerate the bond, it was Continental's responsibility to include that motion in the record. It did not. Without the motion, we are unable to discern Continental's precise legal arguments or the contents of any supporting evidentiary declarations.

The People, however, state that on January 3, 2014 Continental "re-filed its motion to vacate the bail forfeiture and exonerate the bond." For purposes of this appeal, we will therefore presume that Continental re-filed the same motion it previously filed on October 31, 2013.

The record remains inadequate because Continental proceeded without a reporter's transcript. At the February 14, 2014 hearing on Continental's motion to vacate the forfeiture and exonerate the bond, a witness testified for the People, a certified NCIC document was marked for identification, and the trial court determined that Elfaki's bench warrant had been entered into NCIC on a specified date. Although we know the trial court denied Continental's motion, without a reporter's transcript we do not have the testimonial evidence adduced by the People and we have no way to ascertain what the parties argued and what the trial court found.

"In the usual case, the lack of a reporter's transcript does preclude arguments about the sufficiency of the evidence: 'The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence. [Citations.]' [Citation.]" (*City of Chino v. Jackson* (2002) 97 Cal.App.4th 377, 385.) "Where the appellant fails to provide a reporter's transcript, 'it is presumed that the unreported trial testimony would demonstrate the absence of error.' [Citations.] 'Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' [Citation.]" (*People v. Seneca Ins. Co.*, *supra*, 116 Cal.App.4th at p. 80.)

9

Without the evidence introduced during the hearings and without a transcript of the hearings, we are compelled to conclude that Continental is precluded from challenging the factual findings underlying the order from which it has appealed. Inasmuch as it was Continental's "obligation as appellant to present a complete record for appellate review, and in the absence of a required reporter's transcript and other documents, we presume the judgment is correct. [Citations.]" (*Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039.)

## D. *No Abuse of Discretion Has Been Demonstrated Based on the Evidence Submitted by Continental*

Despite Continental's failure to provide an adequate record on appeal, we nonetheless address Continental's claims on the evidence it submitted with its motion.

### 1. *Continental's Lack of Knowledge of Elfaki's True Identity*

Continental contends a mutual mistake of fact as to the actual identity of the individual for whom it posted bail is grounds for rescission of the bail contract. Continental did not raise this issue in its motion and has forfeited it on appeal. (*Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1323 [litigant may not change its position by asserting a new theory on appeal].)[14] Continental's newly asserted theory involves a factual issue related to contract formation and Continental's decision-making process in issuing the bond. There is nothing in the record before us to support Continental's claim that "the proper identification [of the defendant] was crucial to the decision to provide bail."[15] Having forfeited this argument by failing to raise it in its

---

[14] While "a new theory raising a pure question of law on undisputed facts can be raised for the first time on appeal" (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 907), Continental's new theory is a factual one to which the People did not have the opportunity to respond or present evidence below.

[15] Nor has Continental cited to anything in the record to support its factual assertion.

10

motion, we limit our review to Continental's argument below that the bond should have been exonerated because the County of Los Angeles gave Continental false information regarding defendant's true identity.

Continental does not point to any evidence that the jailers intentionally gave Continental a false name. "[T]he State does not owe the bail bond surety a duty of disclosure in the absence of active concealment or misrepresentation or a showing that the State had exclusive knowledge of facts that were not known to or reasonably discoverable by the surety." (*People v. Accredited Surety & Casualty Co., Inc.* (2004) 125 Cal.App.4th 1, 5.)

Continental does not direct our attention to any *evidence* of "active concealment by the State or any showing that the State had 'sole knowledge or access to [the] material facts and kn[ew] that such facts are not known to or reasonably discoverable by [Continental].' [Citations.]" (*People v. Accredited Surety & Casualty Co., Inc.*, *supra*, 125 Cal.App.4th at pp. 9-10.) More specifically, nothing suggests Continental presented any evidence that the law enforcement officials who booked and jailed Elfaki knew and actively concealed Elfaki's true name, misrepresented that Elfaki was the defendant's true name, or had reason to know that Elfaki was an alias at the time Continental entered into the bail contract. That the People charged the defendant under the name Elfaki strongly suggests that at the time they did so, they too were unaware of his true identity and simply accepted the name Elfaki gave the police at the time of booking.

In addition, Continental does not direct our attention to any evidence establishing that it could not undertake its own due diligence in deciding whether to issue the bond. It presented no evidence that it made any effort to protect itself by interviewing the prisoner or family members before posting bail in an attempt to ensure that it had all relevant information it would need to apprehend the prisoner if he failed to appear and absconded. Nothing suggests Continental lacked the means to investigate. In the absence of such evidence, the trial court acted well within its discretion in denying Continental's motion to vacate the forfeiture and exonerate the bond on the ground of misidentification.

11

Moreover, Continental ultimately discovered Elfaki was an alias[16] and actually located him in another state thereby undermining its claim it could not have obtained the information on its own. Thus, it appears Continental's lack of knowledge of Elfaki's true name did not hamper Acme's and Continental's attempts to locate Elfaki. It simply did not successfully apprehend him within the extended exoneration period.

2. *Police Interference*

It is well established that when the conditions of a bail bond are rendered impossible by the act of the People, the bond will be exonerated. (*People v. Accredited Surety & Casualty Co., Inc.*, *supra*, 125 Cal.App.4th at p. 6; accord, *People v. Meyers* (1932) 215 Cal. 115, 117.) In reliance on this rule, Continental claims that its performance under the bail contract was rendered impossible by the act of a law enforcement officer, who directed a bail agent to cease efforts to locate Elfaki.

In its efforts to locate and apprehend Elfaki, Acme retained numerous individuals. One of these was a fugitive recovery agent, Lucciano Aguirre. Aguirre, who was retained by Acme on March 12, 2013, claimed that on April 10, he contacted Los Angeles Police Detective Elvis Hernandez at the headquarters of the fugitive warrant detail. Detective Hernandez "ordered [Aguirre] to stop looking for Elfaki and to 'BACK OFF' the investigation." Not wanting to violate the law by interfering with a police investigation, Aguirre "immediately" stopped his investigation.

Based on this evidence, Continental argues that bail should be exonerated because the government interfered with its ability to locate Elfaki. We are not convinced. Even assuming the alleged action constitutes interference, it does not establish impossibility.

---

[16] Attached to the declaration of Brendan Pegg, Continental's attorney, are copies of printouts given to him by investigators from Continental. A criminal history record prepared on September 24, 2013 lists "Aladden Elfaki" as a purported alias for "Aldin A. Mahamoud."

While Aguirre may have stopped his efforts to locate Elfaki, Acme and Continental did not.[17]

In August 2013, Stanley Los, a retired FBI Special Agent, working for the Summit Research Group, which Acme retained to locate Elfaki, sent correspondence to the deputy district attorney encouraging her to request a federal unlawful flight to avoid prosecution warrant (18 U.S.C. § 1073) in an effort to locate Elfaki. Los sent a similar letter to the police detective who investigated Elfaki's case.

In October 2013, Continental hired Anthony Lee Choquette, a licensed bail agent, "to reopen a stalled investigation" involving Elfaki. On October 22, Choquette "contacted a professional acquaintance with the United States Marshals Service" who as a professional courtesy "ran a warrant inquiry through the [NCIC] for: Aladden Alfaki [*sic*] DOB-09/15/1969." (Bold omitted.) The "inquiry returned a 'No Hits' for active WARRANTS" for Elfaki. (Bold omitted.)

Choquette further reported that, throughout the investigation as to Elfaki's whereabouts, Acme's fugitive recovery agents and employees had compiled "an enormous amount of information" which placed Elfaki in Texas, Virginia and West Virginia. Choquette personally received information that Elfaki was staying with a niece in Virginia Beach, Virginia while he was traveling to and from New York. He was driving, or was a passenger in, a semi-tractor trailer truck owned by a trucking firm in Fontana.

On October 24, 2013, Choquette received a voice message from a woman with a Virginia telephone number telling him that Elfaki would be staying at the Ocean Front Inn in Virginia Beach that night only. Choquette contacted the Virginia Beach police. The dispatcher was unable to confirm the existence of the warrant. Choquette faxed a copy of the complaint and warrant to the dispatcher. Although the dispatcher confirmed the warrant with the Los Angeles Police Department, the Virginia Beach police could not

---

[17]    It is not clear from the record what, if any, efforts Continental undertook from April 10, 2013 to August 2013 when Stanley Los was retained to locate Elfaki.

arrest and hold Elfaki because the warrant could not be confirmed as extraditable through NCIC.

Because Detective Hernandez's directive to Lucciano did not deter Acme and Continental from searching for Elfaki, Continental's performance under the contract clearly was not rendered impossible. Detective Hernandez's directive did not cause Continental's unsuccessful apprehension of Elfaki. Accordingly, the trial court did not abuse its discretion in denying Continental's motion to vacate the forfeiture and exonerate the bond due to police interference. (*People v. Accredited Surety & Casualty Co., Inc.*, *supra*, 125 Cal.App.4th at p. 6.)

**DISPOSITION**

The order is affirmed. The People are awarded costs on appeal.


BECKLOFF, J.[*]


We concur:



PERLUSS, P. J.



SEGAL, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.